**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EV ENERGY PARTNERS, L.P., *et al.*,[1] | ) | Case No. 18-10814 (CSS) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**DEBTORS' MOTION FOR ENTRY
OF AN ORDER (I) SCHEDULING A COMBINED
DISCLOSURE STATEMENT APPROVAL AND PLAN
CONFIRMATION HEARING, (II) ESTABLISHING A PLAN
AND DISCLOSURE STATEMENT OBJECTION DEADLINE AND
RELATED PROCEDURES, (III) APPROVING THE SOLICITATION
PROCEDURES, (IV) APPROVING THE CONFIRMATION HEARING NOTICE,
AND (V) DIRECTING THAT A MEETING OF CREDITORS NOT BE CONVENED**

The above-captioned debtors and debtors in possession (together, the "Debtors")
respectfully state the following in support of this motion:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as
**Exhibit A**, (a) scheduling a combined hearing (the "Confirmation Hearing") on the adequacy of
the Debtors' disclosure statement (as amended, supplemented, or otherwise modified from time
to time, the "Disclosure Statement") and confirmation of the Debtors' prepackaged Plan (as
defined herein); (b) establishing a deadline for objections to the adequacy of the Disclosure
Statement and confirmation of the Plan (the "Objection Deadline") and approving related
procedures; (c) approving the solicitation procedures regarding votes to accept the Plan

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: EV Energy Partners, L.P. (5690); EV Properties, L.P. (5543); EV Properties GP, LLC (3943); EnerVest Production Partners, Ltd. (8619); EVPP GP, LLC (8340); CGAS Properties, L.P. (7277); EVCG GP, LLC (7274); EnerVest Monroe Marketing, Ltd. (7606); EnerVest Monroe Gathering, Ltd. (7608); EV Energy GP, L.P. (5646); EV Management, LLC (5594); EV Energy Finance Corp. (3405); Belden & Blake, LLC (6642); and EnerVest Mesa, LLC (1725). The Debtors' service address is: 1001 Fannin Suite 800, Houston, TX, 77002.

(the "Solicitation Procedures"); (d) approving the form and manner of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"); and (e) (i) conditionally waiving the requirement that the Debtors' file schedules of assets and liabilities and statements of financial affairs and (ii) directing that the United States Trustee for the District of Delaware (the "U.S. Trustee") not convene a meeting of creditors (the "Creditors' Meeting") under section 341(e) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") if the Plan is confirmed within 75 days of the Petition Date (as defined below).

2.     In connection with the foregoing, the Debtors request that the Court approve the following schedule of proposed dates (the "Confirmation Schedule"):[2]

| Event | Date |
|-------|------|
| Voting Record Date[3] | March 12, 2018 |
| Start of Solicitation | March 14, 2018 |
| Voting Deadline | March 30, 2018 |
| Petition Date | April 2, 2018 |
| Confirmation Hearing Notice Date | April 5, 2018 |
| Objection Deadline | May 3, 2018 |
| Reply Deadline | May 10, 2018 |
| Confirmation Hearing | May 15, 2018 |

### Jurisdiction and Venue

3.     The United States Bankruptcy Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f)

---

[2]   Certain of the proposed dates are subject to the Court's availability.

[3]   The "Voting Record Date" is the date as of which a holder of record of a claim entitled to vote on the Plan must have held such claim or interest to cast a vote to accept or reject the Plan.

2

of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, 3020, and 9006, and Local Rules 3017-1 and 9006-1.

**Background**

5.      EV Energy Partners, L.P. is a publicly traded, master limited partnership ("MLP") specializing, together with its Debtor affiliates, in the acquisition and efficient operation and development of onshore oil and gas properties in the continental United States.  The Debtors are headquartered in Houston, Texas, and operate throughout the United States, with holdings in the Barnett Shale, the San Juan Basin, the Appalachian Basin, Michigan, Texas, Louisiana, Oklahoma, Arkansas, Kansas, and the Permian Basin.

6.      On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances surrounding these chapter 11 cases is set forth in the *Declaration of Nicholas P. Bobrowski in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this motion.[4]

7.      The Debtors continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have

---

[4]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the First Day Declaration, the Plan, or the Disclosure Statement, as applicable.

concurrently filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committees have been appointed or designated.

## Introduction

8. The Debtors commenced these chapter 11 cases to implement a prepackaged restructuring transaction that has broad support across the Debtors' capital structure and contemplates the payment in full of all general unsecured creditors, as set forth in the *Joint Prepackaged Chapter 11 Plan of Reorganization for EV Energy Partners, L.P. and Its Debtor Affiliates* filed contemporaneously herewith (as may be amended, modified, or supplemented from time to time, the "Plan"). The restructuring transactions contemplated by the Plan will significantly deleverage the Debtors' balance sheet, reducing the Debtors' funded debt obligations by approximately $343,348,000 from the current aggregate principal amount of approximately $640,348,000, consisting of: (a) approximately $297,000,000 in obligations under the RBL Facility and (b) approximately $343,348,000 in obligations under the Senior Notes.

9. Pursuant to the terms of the Debtors' prepetition restructuring support agreement (the "RSA"), lenders holding 100 percent of the loans outstanding under the RBL Facility (the "Consenting Lenders") and noteholders holding approximately 70 percent of the Senior Notes (the "Consenting Noteholders"), have committed to support the Plan. Moreover, based on ballots received as of the Petition Date, the Plan already has the support necessary to meet the voting requirements of section 1126(c) of the Bankruptcy Code from all classes entitled to vote

on the Plan.  Specifically, holders of Class 3 (RBL Facility Claims) and Class 4 (Senior Notes Claims)[5] have voted to accept the Plan in the following amounts:[6]

| Classes | Total Ballots Received | | | |
|---|---|---|---|---|
| | Accept | | Reject | |
| | AMOUNT (% of Amount Voted) | NUMBER (% of Number Voted) | AMOUNT (% of Amount Voted) | NUMBER (% of Number Voted) |
| Class 3 (RBL Facility Claims) | 100% | 100% | 0% | 0% |
| Class 4 (Senior Notes Claims) | 99.51% | 91.76% | 0.49% | 8.24% |

10.    In addition to the overwhelming support of their funded capital structure, the Plan also contemplates *paying all allowed unsecured Claims in full in the ordinary course*.  As the ultimate goal of the restructuring contemplated by the Plan and these chapter 11 cases is to maximize the value of the Debtors' business, it is critical that the Debtors emerge from chapter 11 in a timely manner with a right-sized balance sheet.  The Debtors, therefore, submit that confirming the Plan on the schedule set forth in this motion is in the best interests of the Debtors, their estates, and all stakeholders and should be approved.

---

[5]    In order to comply with the registration exemptions contained in section 4(a)(2) and/or Regulation D promulgated under the Securities Act of 1933, as amended (the "Securities Act"), and similar Blue Sky Laws provisions, the Debtors only solicited votes for Class 4 (Senior Notes Claims) from "Accredited Investors" as that term is defined in Rule 501 of the Securities Act.

[6]    *See Declaration of James Daloia of Prime Clerk LLC Regarding Service of Solicitation Packages and Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan of Reorganization of EV Energy Partners, L.P. and its Debtor Affiliates* (the "Voting Report"), filed contemporaneously herewith.  The Debtors commenced solicitation of the Plan on March 14, 2018.  Solicitation remained open until March 30, 2018 with respect to both Classes 3 and 4.

## The Solicitation Procedures

11.     The Debtors commenced solicitation of certain holders of Claims regarding the Plan prior to the Petition Date in accordance with the following Solicitation Procedures and the Bankruptcy Code.  On March 14, 2018, the Debtors caused their solicitation agent, Prime Clerk, LLC (the "Solicitation Agent"),[7] to distribute packages containing the Disclosure Statement, the Plan, and ballots ("Ballots") to holders of Claims entitled to vote to accept or reject the Plan as of the Voting Record Date (each, a "Solicitation Package").  Holders of Claims that received the Solicitation Package were directed in the Disclosure Statement and Ballots to follow the instructions contained in the Ballots (and described in the Disclosure Statement) to complete and submit their respective Ballots to cast a vote to accept or reject the Plan.  The Disclosure Statement and applicable Ballot expressly provided that a holder of a Claim seeking to vote on the Plan needed to submit its Ballot so that it was actually received by the Solicitation Agent on or before the Voting Deadline of March 30, 2018, to be counted.

12.     In order to comply with the registration exemptions contained in section 4(a)(2) and/or Regulation D of the Securities Act, and similar Blue Sky Laws provisions, the Debtors only solicited votes for Class 4 (Senior Notes Claims) from "Accredited Investors" as that term is defined in Rule 501 of the Securities Act, and the Ballot for Class 4 instructed only such holders to complete and submit the Ballot to cast a vote to accept or reject the Plan.  Holders of Claims in Class 4 that were not Accredited Investors were instructed not to submit a vote on the Plan.  However, all Class 4 Senior Noteholders were provided instructions on how to take specific action if they desired to opt out of the releases set forth in Article VIII.D of the Plan.

---

7   The Debtors have also applied for authority to retain Prime Clerk, LLC, as their solicitation and noticing agent. *See Debtors' Application for Appointment of Prime Clerk LLC as Claims and Noticing Agent*, filed contemporaneously herewith.

13. Certain other holders of Claims and Interests were not provided a Solicitation Package because such holders are: (a) unimpaired under, and conclusively presumed to accept, the Plan pursuant to section 1126(f) of the Bankruptcy Code; or (b) impaired, entitled to receive no distribution on account of such Claims or Interests under the Plan,[8] and, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

14. As discussed above, voting for the Plan concluded on March 30, 2018, and the Plan has been accepted by 92.1 percent of the creditors in number who have submitted Ballots, including accepting votes from approximately $496,951,800 of the $612,348,000 of Claims entitled to vote on the Plan. The Plan carries the support of RBL Lenders representing 100 percent in amount of Class 3 (RBL Facility Claims) and Senior Noteholders that are "Accredited Investors" representing approximately 99.51 percent in amount held by creditors in Class 4 (Senior Notes Claims) who have submitted Ballots. And, as noted previously, holders of General Unsecured Claims (Class 5) are unimpaired under the Plan and, thus, are presumed to have accepted the Plan.

15. The Debtors' procedures and standard assumptions for tabulating Ballots include:

**Votes Not Counted**
- any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim
- any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline (unless the Debtors determine otherwise or as permitted by the Court)
- any unsigned Ballot
- any Ballot that partially rejects and partially accepts the Plan
- any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan

---

[8] This includes holders of Existing EVEP Equity Interests that will not receive any distribution on account of their Interests under the Plan, but will receive their Pro Rata share of: (a) five percent of the New Common Stock (subject to dilution by the MIP Shares and New Common Stock issued pursuant to the New Warrants); and (b) the New Warrants.

7

- any Ballot superseded by a later, timely submitted valid Ballot

- any improperly submitted Ballot (unless the Debtors determine otherwise or as permitted by the Court)

- any Ballot cast by a person or entity that does not hold a Claim in a class that is entitled to vote on the Plan

**No Vote Splitting**

- holders are required to vote all of their Claims within a particular class either to accept or reject the Plan and are not permitted to split any votes

## Basis for Relief

### I.    Scheduling the Confirmation Hearing.

16.    Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto." Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan." Also, the Court may combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan. *See* 11 U.S.C. § 105(d)(2)(B)(vi) (authorizing the Court to combine a hearing on approval of a disclosure statement with the confirmation hearing). Therefore, the Debtors request that the Court consider both the adequacy of the Disclosure Statement and whether to confirm the Plan at the Confirmation Hearing, and to schedule the Confirmation Hearing on May 15, 2018 (or as soon as possible thereafter).

17.    It is appropriate to set the Confirmation Hearing on May 15, 2018 (or as soon as possible thereafter). *First*, the Debtors have requested that the Court schedule the Confirmation Hearing on a date that is more than 35 days after the Petition Date, and the Debtors will provide notice consistent with Bankruptcy Rules 2002 and 3017(a) and section 1128(a) of the Bankruptcy Code. *Second*, as described above, the Debtors commenced solicitation on March 14, 2018, and solicitation was in accordance with sections 1125(g) and 1126(b) of the

Bankruptcy Code. The Disclosure Statement and other solicitation materials were distributed to each holder of a claim entitled to vote on the Plan. ***Third***, the Plan is a consensual prepackaged plan, and the Debtors have already obtained sufficient support for Plan from the Consenting Noteholders and the Consenting RBL Lenders, consistent with section 1126(c) of the Bankruptcy Code. ***Fourth***, a combined hearing on the Disclosure Statement and Plan will reduce the time the Debtors remain in bankruptcy, thereby cutting the costs of administering and funding these chapter 11 cases.

## II.    Objection Deadline and Related Procedures.

18.    Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider . . . any objections or modifications" to the Disclosure Statement.    Similarly, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail of the time fixed for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary."    Under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."

19.    The Debtors request that the Court set the Objection Deadline at 5:00 p.m., prevailing Eastern Time, on May 3, 2018.    Additionally, the Debtors request that the Court require that objections to the Disclosure Statement or confirmation of the Plan must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and

(e) be filed with the Court with proof of service thereof and served upon the notice parties so as to be actually received by the Objection Deadline.

20. Setting the Objection Deadline as requested, and requiring that objecting parties satisfy the above-mentioned conditions, is warranted. *First*, the Debtors' proposed schedule would provide entities at least 28-days' notice of the Objection Deadline, in accordance with Bankruptcy Rule 2002(b)(1). *Second*, the requested relief otherwise complies with the applicable rules and will afford the Court, the Debtors, and other parties in interest sufficient time to consider the objections prior to the Confirmation Hearing. *Third*, holders of Claims entitled to vote on the Plan will have received notice of the Plan and the restructuring transactions contemplated thereunder at least 50 days prior to the Objection Deadline through the Solicitation Procedures. No party should require additional time.

### III. Approval of the Solicitation Procedures.

21. The Debtors distributed the Solicitation Packages and solicited votes to accept or reject the Plan prior to the Petition Date in accordance with sections 1125 and 1126 of the Bankruptcy Code. *See* 11 U.S.C. § 1125(g) (debtors may commence solicitation prior to filing chapter 11 petitions); 11 U.S.C. § 1126(b)(2) (holders of Claims that accepted or rejected a plan before the commencement of a chapter 11 case are deemed to accept or reject the plan so long as the solicitation provided adequate information). Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of Claims for the purpose of soliciting their votes to accept or reject a plan of reorganization. Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by [Bankruptcy Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of the procedures and enter any orders the court deems appropriate." As set forth herein, the Solicitation Procedures comply with the Bankruptcy Code and the

Bankruptcy Rules, and the Debtors seek approval of the Solicitation Procedures, the Ballots, and the procedures used for tabulations of votes to accept or reject the Plan.

### A.      Voting Record Date.

22.      Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the holders of record of the applicable Claims against a debtor entitled to receive Ballots and related solicitation materials are to be determined "on the date specified in the solicitation."   The Disclosure Statement and Ballots clearly identified March 12, 2018, as the date for determining which holders of Claims were entitled to vote to accept or reject the Plan.

### B.      Plan Distribution and Voting Deadline.

23.      Bankruptcy Rule 3018(b) provides that prepetition acceptances and rejections of a plan are valid only if the plan was transmitted to substantially all the holders of Claims entitled to vote on the plan and the time for voting was not unreasonably short.  As set forth in the Voting Report, all holders of Claims entitled to vote on the Plan were transmitted the Plan on March 14, 2018.  Voting Report ¶¶ 4, 6.  As clearly set forth in the Disclosure Statement and Ballots, the Voting Deadline for Classes 3 and 4 was set for March 30, 2018.  This period of time accords with applicable nonbankruptcy law as there is no provision in any applicable law that requires a set period of time for voting on the Plan.

24.      The Plan is the product of months of extensive negotiations among the Debtors, the Consenting Noteholders, the Consenting RBL Lenders, and other key stakeholders.  As a result, the Debtors commenced solicitation shortly after the RSA was signed and set the Voting Deadline 16 days after the commencement of solicitation.  The solicitation period provided sufficient time for the holders of Claims entitled to vote to make an informed decision to accept or reject the Plan.  Moreover, 92.1 percent of the voting creditors voted for the Plan which

supports a finding that holders of Claims in the Voting Classes had adequate time to consider the Plan and the Disclosure Statement.

25. Thus, the Debtors respectfully submit that holders of Claims had adequate time to consider the Plan and the Disclosure Statement and submit a Ballot before the applicable Voting Deadline. *See, e.g.*, *PES Holdings, LLC*, No. 18-10122 (KG) (Bankr. D. Del. Jan. 29, 2018) (approving procedures for solicitation that included a two-day voting period); *In re Hercules Offshore, Inc.*, No. 16-11385 (KJC) (Bankr. D. Del. June 15, 2016) (approving procedures for solicitation of first lien claimholders that included voting period of three days); *In re Cubic Energy, Inc.*, No. 15-12500 (CSS) (Bankr. D. Del. Jan. 12, 2016) (approving procedures for solicitation that included a one-day voting period).

26. The transactions proposed in the Plan are the product of arm's-length negotiations among the Debtors, the Consenting Noteholders, the Consenting RBL Lenders, and other parties in interest. Prior to the commencement of solicitation, the Plan and Disclosure Statement were subject to extensive review and comment by representatives of the holders of Claims in Classes 3 and 4. Further, all of the holders of Claims in Classes 3 are sophisticated market participants and were kept abreast of the process and negotiations by both the Debtors and the Consenting RBL Lenders. For these reasons, the Debtors believe that the solicitation period is sufficient and appropriate for holders of Claims entitled to vote on the Plan to make an informed decision to accept or reject the Plan.

**C. The Ballots.**

27. Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which substantially conforms to Official Form 314, only to "creditors and equity security holders entitled to vote on the plan." Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the

12

creditor or equity holder or an authorized agent, and conform to the appropriate Official Form." As set forth in the Voting Report, all holders of Claims entitled to vote on the Plan were transmitted Ballots. Voting Report ¶¶ 5–6. The Ballots used in the Solicitation Packages are based on Official Form 314, and have been modified, as applicable, to address the particular circumstances of these chapter 11 cases to include certain information that the Debtors believe to be relevant and appropriate for holders of Claims entitled to vote to accept or reject the Plan. Notably, the Class 4 beneficial Holder ballot provides that only Accredited Investors are entitled to vote on the Plan. The forms of Ballots used in the Solicitation Packages are annexed as **Exhibits 3-A**, **3-B**, and **3-C** attached hereto.

### D.    Voting Tabulation.

28.    As described above, the Debtors used standard tabulation procedures in tabulating votes for the Plan. These procedures are consistent with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a). These tabulation procedures are also consistent with those used in cases in this district. *See, e.g.*, *PES Holdings, LLC*, No. 18-10122 (KG) (Bankr. D. Del. Jan. 29, 2018) (approving prepackaged vote tabulation procedures substantially similar to those utilized here); *In re Dex Media, Inc.*, No. 16-11200 (KG) (Bankr. D. Del. May 18, 2016) (same); *In re EveryWare Global, Inc.*, No. 15-10743 (LSS) (Bankr. D. Del. Apr. 9, 2015) (same); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (same); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013) (same).

29.    The Debtors did not solicit the votes of holders of Claims in Class 4 that were not Accredited Investors. Votes on Ballots returned by holders of Claims in Class 4 that failed to certify that they were an Accredited Investor were not accepted and were excluded from the tabulation of votes on the Plan, and any such Ballots submitted after the date hereof shall not be accepted and shall be excluded from the final tabulation of votes on the Plan. Courts in this and

13

other districts have approved voting tabulation procedures that did not solicit and did not count votes received from holders that were not Accredited Investors. *See, e.g.*, *In re Dex Media, Inc.*, No. 16-11200 (KG) (Bankr. D. Del. May 18, 2016) (approving voting procedures and ballot where holders that were not accredited investors were not solicited and instructed not to return ballots); *In re Hercules Offshore, Inc.*, No. 15-11685 (KJC) (Bankr. D. Del. Aug. 14, 2015) (same); *In re QCE Finance, LLC*, No. 14-10543 (PJW) (Bankr. D. Del. May 12, 2014) (same); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y. Mar. 13, 2014) (same); *In re Revel AC, Inc.*, No. 13-16254 (JHW) (Bank. D.N.J. Mar. 28, 2013) (same).

## E.    The Debtors' Prepetition Solicitation Was Exempt from Registration and Disclosure Requirements Otherwise Applicable Under Nonbankruptcy Law.

30.    Section 1125(g) of the Bankruptcy Code provides that:

> [A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.

31.    Section 1126(b) of the Bankruptcy Code provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—(1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

32.    Therefore, prepetition solicitation must either comply with generally applicable federal or state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited holders must receive "adequate information" under section 1125 of the Bankruptcy Code.

14

33.     The Debtors respectfully submit that their prepetition solicitation is sheltered under one or more of the exemptions from registration provided by the Securities Act, including section 4(a)(2) thereof, state "Blue Sky" laws, or any similar rules, regulations, or statutes. Section 4(a)(2) of the Securities Act creates an exemption from nonbankruptcy securities law for transactions not involving a "public offering" which the Debtors relied on in connection with their prepetition solicitation.   15 U.S.C.A. § 77d(a)(2).   Specifically, with respect to holders of Claims in Class 4 who will receive securities under the Plan, the Debtors took steps to ensure that all parties entitled to vote on the Plan were Accredited Investors, as that term is defined in Rule 501 of Regulation D promulgated under the Securities Act.  As a result of the foregoing, there was no general solicitation in connection with the sale of securities under the Plan.  Additionally, with respect to holders of Class 4 Senior Notes Claims, the Debtors stated explicitly in the Ballot and in the Disclosure Statement that votes were only being solicited from those holders of Class 4 Claims that were Accredited Investors.   As such, the Debtors' prepetition solicitation does not constitute a public offering because it falls within the exemption set out in section 4(a)(2) of the Securities Act.  Moreover, the holders of Class 3 RBL Facility Claims will not receive securities pursuant to the Plan.  The Debtors respectfully submit that the requirements of section 1126(b)(1) of the Bankruptcy Code are inapplicable to the Debtors' prepetition solicitation.  As discussed more fully below, the Debtors will seek a determination from the Court at the Confirmation Hearing that all solicited holders received "adequate information" as defined by section 1125(a) of the Bankruptcy Code in compliance with section 1126(b)(2) of the Bankruptcy Code.

34.     Debtors in this and other districts have utilized section 4(a)(2) of the Securities Act to exempt their prepetition solicitation from the registration and disclosure

15

requirements otherwise applicable under nonbankruptcy law.  *See*, *e.g.*, *In re PES Holdings, LLC*, No. 18-10122 (KG) (Bankr. D. Del. Jan. 29, 2018) (approving solicitation procedures that included section 4(a)(2) exemption); *In re Dex Media, Inc.*, No. 16-11200 (KG) (Bankr. D. Del. May 18, 2016) (same); *In re Hercules Offshore, Inc.*, No. 15-11685 (KJC) (Bankr. D. Del. Aug. 14, 2015) (same); *In re EveryWare Global, Inc.*, No. 15-10743 (LSS) (Bankr. D. Del. Apr. 7, 2015) (same); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (same).

## IV.    Approval of the Disclosure Statement.

35.    The Debtors will request that the Court find that the Disclosure Statement contains "adequate information" as defined in section 1125(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 1126(b)(2) (because there is no nonbankruptcy law governing the solicitation of holders of Claims prior to the Debtors commencing these chapter 11 cases, such solicitation must have been based on the Debtors providing such holders "adequate information").

36.    The Disclosure Statement contains adequate information because it is extensive and comprehensive.  What constitutes "adequate information" is based on the facts and circumstances of each case, but the focus is on whether sufficient information is provided to enable parties to vote in an informed way, and that standard is easily met here.  *See* 11 U.S.C. § 1125(a)(1); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321–22 (3d Cir. 2003) (providing that a disclosure statement must contain "adequate information to enable a creditor to make an informed judgment about the Plan") (internal quotations omitted); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (noting that "adequate information" varies on a case-by-case basis).  For instance, the Disclosure Statement contains descriptions and summaries of, among other things: (a) both the Plan and the Debtors' related reorganization efforts; (b) certain events and relevant

16

negotiations preceding the commencement of these chapter 11 cases; (c) the key terms of the restructuring; (d) risk factors affecting consummation of the Plan; (e) a liquidation analysis setting forth the estimated recovery that holders of Claims and Interests would receive in a hypothetical chapter 7 case; (f) financial information and valuations that are relevant in determining whether to accept or reject the Plan; and (g) federal tax law consequences of the Plan.   In addition, and as noted above, the Disclosure Statement and the Plan were subject to extensive review and comment by the Consenting Noteholders and the Consenting RBL Lenders. Accordingly, the Debtors submit that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code and should be approved.

## V.       Waiver of Certain Solicitation Package Mailings.

37.       The Debtors request that the Court waive the requirement that they mail a copy of the Solicitation Package to holders of Claims presumed to accept the Plan.  *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of a court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders unless the court orders otherwise).  Bankruptcy Rule 3017(d) applies, in relevant part, "[u]pon approval of a disclosure statement."  Accordingly, Bankruptcy Rule 3017 may be deemed not to apply here considering the prepetition solicitation process employed.  *See also* 11 U.S.C. § 1126(f)–(g) (providing that solicitation of parties either presumed to accept or deemed to reject is unnecessary).  Distributing the Solicitation Packages to non-voting creditors is costly and administratively burdensome.  The Debtors submit that their resources should not be dissipated by having to satisfy this mailing requirement, especially given that the Debtors will also make the Solicitation Package (excluding the Ballots) available at no cost on their website maintained in the chapter 11 cases:  https://cases.primeclerk.com/evep.

17

**VI.    Approval of the Form and Manner of the Notice.**

38.    Bankruptcy Rule 2002 requires at least 28-days' notice to all holders of Claims and Interests of the time fixed for filing objections to the hearing on confirmation of a chapter 11 plan. Fed. R. Bankr. P. 2002(b), (d).[9]  To that end, the Debtors request that the Court approve the Confirmation Hearing Notice, substantially in the form of **Exhibit 1** annexed to **Exhibit A** attached hereto.  In accordance with Bankruptcy Rules 2002 and 3017(d), the Confirmation Hearing Notice will:  (a) provide notice of the commencement of these chapter 11 cases; (b) provide a brief summary of the Plan; (c) disclose the date and time of the Confirmation Hearing; (d) disclose the date and time of the Objection Deadline and the procedures for objecting to the Disclosure Statement and the Plan; and (e) provide the record date for receiving distributions under the Plan.

39.    The Debtors will serve the Confirmation Hearing Notice upon the Debtors' creditor matrix and all interest holders of record no later than one business day after entry of the proposed order.  The Debtors will likewise serve the Confirmation Hearing Notice upon the Notice Parties (as defined below).

40. Bankruptcy Rule 2002(l) also permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  The Debtors propose to publish a notice in the *New York Times* (*National Edition*), *Wall Street Journal* (*National Edition*), and the *Houston Chronicle* within five business days following entry of the proposed order, substantially in the form of **Exhibit 2** annexed to **Exhibit A** attached

---

9    Bankruptcy Rule 3017(a) contains a similar requirement with respect to the hearing on approval of a disclosure statement.  Here, the Debtors do not seek separate approval of the Disclosure Statement under section 1125(b) of the Bankruptcy Code.  Such approval is not required at the present time because the Disclosure Statement was transmitted prepetition.  Rather, the Debtors will seek approval of the Disclosure Statement, including a finding that the Disclosure Statement contained "adequate information" at the Confirmation Hearing pursuant to section 1125(g) of the Bankruptcy Code.

hereto (the "Publication Notice").  In addition, the Publication Notice will be available on the Debtors' website at https://cases.primeclerk.com/evep.  The Debtors believe that the Publication Notice will provide sufficient notice of the pending approval of the Disclosure Statement, the Confirmation Hearing, and the Objection Deadline to entities who will not otherwise receive notice by mail as provided herein and through the Solicitation Procedures.

## VII.    Conditional Waiver of the Creditors' Meeting and the Filing of SOFAs and Schedules.

41.    The Debtors respectfully submit that the circumstances of these chapter 11 cases merit a conditional waiver of the requirements that (a) the U.S. Trustee convene a Creditors' Meeting, and (b) the Debtors file schedules of assets and liabilities (the "Schedules") and statements of financial affairs (the "SOFAs").  This relief is appropriate because the Debtors' Plan already carries the support of holders of 92.1 percent of the Voting Classes and will satisfy all General Unsecured Claims in full in cash.

42.    Although section 341(a) of the Bankruptcy Code typically requires the U.S. Trustee to convene and preside over a meeting of the Debtors' creditors, that requirement can be waived under the circumstances present here.  Specifically, section 341(e) provides:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e).

43.    As discussed above, the Debtors solicited acceptances of the Plan prior to the Petition Date and received overwhelming support from the creditors entitled to vote on the Plan. Accordingly, the Debtors submit that the meeting of creditors contemplated by section 341 of the Bankruptcy Code need not be convened if the Debtors obtain confirmation of the Plan.

44.    The Debtors also request that the time for filing their Schedules and SOFAs be extended until June 13, 2018 and be waived in the event the Plan is confirmed on or prior to that date.  Pursuant to Local Rule 1007-1(b), the Debtors are already entitled to a 28-day extension of the requirement to file their Schedules and SOFAs because the Debtors have more than 200 creditors.    The Court has authority to grant a further extension "for cause" pursuant to Bankruptcy Rule 1007(c) and Local Rule 1007-l(b).  Here, cause exists to further extend the deadline because requiring the Debtors to file Schedules and SOFAs would distract the Debtors' management and advisors from the work of ensuring a smooth transition into these chapter 11 cases and an expedited confirmation of the Plan.  Given the prepackaged nature of these chapter 11 cases, the Schedules and SOFAs would also be of limited utility to most parties in interest— the Debtors have already solicited and obtained acceptances of the Plan from creditors in the Classes 3 and 4 and the Debtors' Plan proposes to satisfy all other Claims in full.  The minimal benefit of requiring the Debtors to prepare the Schedules and SOFAs will be significantly outweighed by the substantial expenditure of time and resources the Debtors will be required to devote to the preparation and filing of the documents.  For these reasons, the Court should only contingently require the Debtors to file SOFAs and Schedules if the Plan is not confirmed on or before June 13, 2018.

45.    Courts in this district have frequently waived the requirements for the U.S. Trustee to convene a Creditors' Meeting and for a debtor to file Schedules and SOFAs in other prepackaged chapter 11 cases. *See e.g.*, *In re PES Holdings, LLC*, No. 18-10122 (KG) (Bankr. D. Del. Jan. 29, 2018); *In re Key Energy Services, Inc.*, No. 16-12306 (BLS) (Bankr. D. Del. Oct. 25, 2016); *In re Halcon Resources Corp.*, No. 16-11724 (BLS) (Bankr. D. Del. Jul. 29, 2016); *In re RCS Capital Corp.*, No. 16-10223 (MFW) (Bankr. D. Del. Mar. 29, 2016); *In re*

20

*Offshore Group Inv. Ltd.*, No. 15-12422 (BLS) (Bankr. D. Del. Dec. 4, 2015).  For the reasons discussed above, similar relief is appropriate in these chapter 11 cases as well.

46.    Accordingly, the Debtors respectfully request that the proposed order provide that if the Plan is consummated on or before June 13, 2018, the Creditors' Meeting will be waived and the Debtors will be excused from filing the SOFAs and Schedules, in each case without further order of the Court.

47.    The Debtors ask that the requested relief be granted without prejudice to the Debtors' ability to seek further extension or modification of the requirements for the U.S. Trustee to convene a Creditors' Meeting and for the Debtors to file Schedules and SOFAs.  The Debtors also request that the Court authorize the Debtors to further extend the deadline to convene a Creditors' Meeting and file Schedules and SOFAs without filing a supplemental motion, and without further order from the Court, provided that the Debtors obtain the advance consent of the U.S. Trustee.

### Reservation of Rights

48.    Nothing contained herein is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the rights of the Debtors or any other parties in interest to dispute any claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver of any claims or causes of action which may exist against

21

any entity; or (g) a waiver or limitation of the rights of the Debtors or any other parties in interest under the Bankruptcy Code or any other applicable law.

## Notice

49.     The Debtors will provide notice of this motion to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the administrative agent under the Debtors' prepetition secured facility; (d) counsel to the indenture trustee under the Debtors' prepetition senior notes; (e) counsel to the ad hoc committee of holders of 8.0% senior notes due 2019 issued pursuant to that certain Indenture, dated as of March 22, 2011; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (j) the state attorneys general for states in which the Debtors conduct business; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect of this motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

50.     No prior request for the relief sought in this motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the order, substantially in form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Dated: April 2, 2018<br>Wilmington, Delaware | */s/ Laura Davis Jones* |

Laura Davis Jones (Delaware Bar No. 2436)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400

-and-

Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
Jeremy David Evans (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

James H.M. Sprayregen, P.C.
Brad Weiland (*pro hac vice* admission pending)
Travis M. Bayer (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*