## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EV ENERGY PARTNERS, L.P., *et al.*,[1] | ) Case No. 18-10814 (CSS) |
| | ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket Nos. 3, 48** |

### FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363
### AND 507, AND BANKRUPTCY RULES 2002, 4001 AND 9014
### (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, AND
### (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES

Upon the motion, dated April 2, 2018 [Docket No. 3] (the "Motion")[2] of the debtors and

debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Cases") for entry

of an interim order and a final order (this "Final Order") under sections 105, 361, 362, 363, and 507 of

title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002, 4001, and

9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), seeking:

(a)     authorization for the Debtors, pursuant to sections 105, 361, 362, 363, and 507
of the Bankruptcy Code, to (i) use the Cash Collateral (as defined in paragraph
4(e) below), and all other Prepetition Collateral (as defined in paragraph 4(d)
below); and (ii) provide adequate protection to the Administrative Agent and the
other Secured Parties (each as defined below) under the Second Amended and
Restated Credit Agreement, dated as of April 26, 2011 (as amended, restated,
amended and restated, supplemented, or otherwise modified from time to time,
the "Credit Agreement," and, together with the Security Instruments (as defined
in the Credit Agreement) and all other documentation executed by any Debtor in
connection with any of the foregoing, each as amended, restated, amended and
restated, supplemented, or otherwise modified from time to time, the "Credit
Documents", and all debts, liabilities and obligations of every kind and nature
under the Credit Documents, including all Secured Obligations (as defined in the
Guarantee and Collateral Agreement referenced in paragraph 4(a) below) the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: EV Energy Partners, L.P. (5690); EV Properties, L.P. (5543); EV Properties GP, LLC (3943); EnerVest
Production Partners, Ltd. (8619); EVPP GP, LLC (8340); CGAS Properties, L.P. (7277); EVCG GP, LLC (7274);
EnerVest Monroe Marketing, Ltd. (7606); EnerVest Monroe Gathering, Ltd. (7608); EV Energy GP, LP (5646); EV
Management, LLC (5594); EV Energy Finance Corp. (3405); Belden & Blake, LLC (6642); and EnerVest Mesa, LLC
(1725). The Debtors' service address is: 1001 Fannin Suite 800, Houston, TX, 77002.

[2]     All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

"Credit Agreement Obligations,"), by and among EV Properties, L.P., EV Energy Partners, L.P., the lenders from time to time party thereto (collectively, the "Lenders") and JPMorgan Chase Bank, N.A., as Administrative Agent (the "Administrative Agent" and, together with the Lenders and each other Guaranteed Creditor (as defined in the Guarantee and Collateral Agreement), the "Secured Parties");

(b)     authorization to grant adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code or any other similar state or federal law (collectively, the "Avoidance Actions");

(c)     except to the extent of the Carve Out (as defined in paragraph 12(a) below), the waiver by the Debtors of any right to surcharge against the Prepetition Collateral or the Adequate Protection Collateral (as defined in paragraph 10(b) below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law; and

(d)     waiver of any applicable stay with respect to the effectiveness and enforceability of this Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

The interim hearing having been held by this Court on April 4, 2018 (the "Interim Hearing"); and this Court having entered an interim order granting the relief sought by the Motion on an interim basis on April 4, 2018 [Docket No. 48] (the "Interim Order"); and the final hearing having been held before the Court on April [27], 2018 (the "Final Hearing"); and upon the record made by the Debtors at the Interim Hearing and the Final Hearing (including, without limitation, the First Day Declaration); and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation and consideration and sufficient cause appearing therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *The Motion.* The Motion is granted on a final basis as set forth herein. Any objection to the entry of this Final Order to the extent not withdrawn or resolved is hereby overruled.

2.      *Jurisdiction.* This Court has core jurisdiction over the Cases commenced on April 2, 2018 (the "Petition Date"), the Motion, and the parties and property affected hereby pursuant to 28

U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    *Notice.*  Notice of the Motion, the relief requested therein, the Interim Hearing and the Final Hearing was served by the Debtors on:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to Delaware Trust Company, as the indenture trustee for the Debtors' 8.0% senior unsecured notes due 2019 (the "Senior Notes"); (d) counsel to the Administrative Agent; (e) counsel to the ad hoc group of unaffiliated holders of the Senior Notes (the "Ad Hoc Noteholder Group"); (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (j) the state attorneys general for states in which the Debtors conduct business; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c), and (d) and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

4.    *Debtors' Stipulations.*  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 24 and 25 below) the Debtors admit, stipulate, and agree that:

> (a)    as of the Petition Date, EV Properties L.P., EV Energy Partners, L.P., and each of the other Guarantors (as defined in the Guarantee and Collateral Agreement) (collectively, the "Debtor Obligors") were indebted and liable to the Lenders, without defense, counterclaim or offset of any kind, for all of the Credit Agreement Obligations, including without limitation, Loans (as defined in the Credit Agreement) made by the Lenders in the aggregate principal amount of $297,000,000 under the Credit Agreement and $237,600 in face amount of undrawn Letters of Credit (as defined in the Credit Agreement), plus accrued

3

and unpaid interest, indemnification obligations, obligations owing to a Secured Swap Provider (as defined in the Guarantee and Collateral Agreement) under a Swap Agreement (as defined in the Credit Agreement), and fees and expenses (including, without limitation, the reasonable fees and expenses of any Agent's, Issuing Bank's or Lender's (each as defined in the Credit Agreement) advisors (but solely to the extent payable under the Credit Agreement)) and other obligations incurred in connection therewith, in each case in accordance with the terms of the Credit Documents; the Credit Agreement Obligations are unconditionally and irrevocably guaranteed by the Guarantors pursuant to the Third Amended and Restated Guarantee and Collateral Agreement, dated as of October 23, 2017 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Guarantee and Collateral Agreement"), among EV Properties L.P., the other Debtor Obligors party thereto from time to time and the Administrative Agent;

(b)     the Credit Agreement Obligations constitute legal, valid and binding obligations of the Debtor Obligors, enforceable in accordance with their terms (except as subject to the stay of enforcement arising under section 362 of the Bankruptcy Code);

(c)     (i) no portion of the Credit Agreement Obligations and no amounts paid at any time to the Administrative Agent or the other Secured Parties in respect of the Credit Agreement Obligations, the Credit Documents, and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery or subordination or other challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (ii) the Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights related to the Credit Agreement Obligations or the Credit Documents, whether arising on or prior to the date hereof, under the Bankruptcy Code or applicable nonbankruptcy law against the Administrative Agent, the other Secured Parties, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors;

(d)     the liens and security interests granted by the Debtor Obligors to the Administrative Agent to secure the Credit Agreement Obligations for the benefit of the Administrative Agent and the other Secured Parties pursuant to and in connection with Credit Documents, are valid, binding, perfected, enforceable, first priority liens and security interests on the real and personal property of the Debtor Obligors pledged pursuant to the Credit Documents, including all real and personal property constituting "Collateral" as defined in the Guarantee and Collateral Agreement and including without limitation, oil and gas properties and as-extracted collateral, deposit accounts (other than accounts expressly excluded) goods, fixtures, hydrocarbons, books and records, documents, instruments, general intangibles, investment property, letter-of-credit rights, pledged notes, intellectual property, and proceeds of each of the foregoing (all such "Collateral," including the Cash Collateral (as defined below), are collectively referred to herein as the "Prepetition Collateral"), subject in each case to permitted exceptions under the Credit Documents, and are not subject to objection, defense, contest, avoidance, recharacterization, reclassification, reduction, or subordination pursuant to the Bankruptcy Code or applicable non-

4

bankruptcy law by any person or entity; provided that the liens and security interests granted in the Prepetition Collateral shall be subject and subordinate to (i) the Carve Out, (ii) liens and security interests granted to secure the Adequate Protection Obligations, and (iii) valid, perfected, and unavoidable liens permitted under the Credit Agreement, to the extent such liens are permitted to be senior to the liens of the Administrative Agent and exist as of the Petition Date (including, for the avoidance of doubt, valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code); and

(e)    all of the Debtors' existing cash and all cash (i) constituting Prepetition Collateral; (ii) constituting proceeds, products, rents, or profits of property of Prepetition Collateral; or (iii) subject to the Secured Parties' rights of setoff constitutes cash collateral (the "Cash Collateral").

5.    *Release.*    Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 24 and 25 below), the Debtors forever and irrevocably (i) release, discharge, and acquit the Administrative Agent and the other Secured Parties, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the Administrative Agent or the other Secured Parties and the Debtors and their affiliates including any equitable subordination claims or defenses, with respect to or relating to the Credit Agreement Obligations, the Credit Documents, the Debtors' attempts to restructure the Credit Agreement Obligations, the Restructuring Support Agreement, dated as of March 13, 2018, by and among the Debtors, the Consenting Noteholders and the Consenting RBL Lenders (each as defined therein), EnerVest, Ltd. and EnerVest Operating, L.L.C. (the "Restructuring Support Agreement"), any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Administrative Agent and the other Secured Parties; and (ii) waive any and all defenses (including,

5

without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Credit Agreement Obligations. Nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent and the other Secured Parties any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

6.　　*Findings Regarding the Use of Cash Collateral and Prepetition Collateral.*

(a)　　Good cause has been shown for the entry of this Final Order.

(b)　　The Debtors have a need to use the Prepetition Collateral, including Cash Collateral, to, among other things, fund the orderly continuation of their businesses, pay their operating expenses and preserve the going concern value of the Debtors.

(c)　　The terms of the use of the Prepetition Collateral pursuant to this Final Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(d)　　The terms of the use of the Prepetition Collateral pursuant to this Final Order have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the Administrative Agent and the other Secured Parties and, pursuant to Bankruptcy Code sections 105, 361, and 363, the Administrative Agent and the other Secured Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Final Order, and each is entitled to the protection provided under section 363(m) of the Bankruptcy Code.

(e)　　The use of the Prepetition Collateral, including the Cash Collateral, in accordance with this Final Order is in the best interest of the Debtors' estates.

7.　　*Authorization of Use of Cash Collateral and Prepetition Collateral.* The Debtors are hereby authorized to continue to use the Prepetition Collateral, including Cash Collateral, during the period from the Petition Date through and including the Termination Date (as defined in paragraph 13) for (i) working capital, general corporate purposes and administrative costs and expenses of the Debtors incurred in the Cases, subject to the terms hereof including the Budget (as defined in paragraph 8); and (ii) adequate protection payments to the Administrative Agent and the other Secured

Parties, as provided herein. All post-petition distributions and transfers by a Debtor to any other Debtor (each, a "Debtor Transferee") shall constitute an allowed administrative expense under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code against such Debtor Transferee in the aggregate amount of such distribution or transfer, which administrative expense claim against such Debtor Transferee shall be junior in all respects to any 507(b) Claims (as defined in paragraph 10(a)) against such Debtor Transferee.

8.      *Consent by the Administrative Agent.* The Administrative Agent and the Required Lenders (as defined in the Credit Agreement) consent to the Debtors' use of Cash Collateral, in accordance with and subject to the terms and conditions contained in this Final Order. All use of Cash Collateral by the Debtors shall be pursuant to a 13-week budget in form and substance acceptable to the Administrative Agent (such an acceptable budget, the "Budget"), subject to any Non-Conforming Use (as such term is defined below) permitted hereunder. The initial Budget was attached to the Interim Order as Exhibit 1. Beginning on Thursday April 26, 2018, every four (4) weeks prior to confirmation of a chapter 11 plan for the Debtors, by Thursday at 5:00 p.m. (prevailing Eastern Time), the Debtors shall deliver to the Administrative Agent and its counsel and financial advisor and to the counsel and financial advisor to the Ad Hoc Noteholder Group an updated 13-week budget. Upon approval of such updated budget by the Administrative Agent, such budget shall become the new Budget. Until such approval, the then-existing Budget shall remain in place. Beginning on Thursday April 19, 2018, and every other Thursday thereafter by 5:00 p.m. (prevailing Eastern Time), the Debtors or their advisors shall deliver to the Administrative Agent and its counsel and financial advisor and to the counsel and financial advisor to the Ad Hoc Noteholder Group a variance report (a "Variance Report") setting forth the Debtors' actual cash flow for the preceding week compared to then existing Budget. For purposes of this Final Order, the Debtors shall ensure that at no time shall an

unfavorable variance by the greater of (a) 15% or more from the "Total Operating Disbursements" (on a consolidated basis) or (b) $500,000 exist, tested every other week on a cumulative rolling four (4) week basis (except the first Variance Report, which shall be tested on a cumulative basis for the two (2) weeks preceding the delivery of such Variance Report) (a "Non-Permitted Variance"); provided that Allowed Professional Fees (as defined in paragraph 12(a) below), payments to the Lender Professionals (as defined in paragraph 11(b) below), and payments to the U.S. Trustee shall not be subject to such operating disbursement test. The initial Budget is the first Budget for reporting and permitted variance purposes. Each proposed budget provided to the Administrative Agent shall be of no force and effect unless and until it is approved by Administrative Agent and until such approval is given, the prior Budget shall remain in effect. The Administrative Agent may agree (in its sole discretion) in writing to the use of the Cash Collateral in a manner or amount which does not conform to the manner or amount, as applicable, set forth in the Budget (including, for the avoidance of doubt, any permitted variances) (each such approved non-conforming use of Cash Collateral, a "Non-Conforming Use"). If such written consent is given (which consent may be given through email by the Administrative Agent's counsel), the Debtors shall be authorized pursuant to this Final Order to use Cash Collateral for any such Non-Conforming Use without further Court approval, and the Secured Parties shall be entitled to all of the protections specified in this Final Order for any such Non-Conforming Use; provided that each such permitted Non-Conforming Use shall be deemed a modification to the Budget for all testing purposes.

9.    *Entitlement to Adequate Protection.* The Administrative Agent and the other Secured Parties are entitled, pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate post-petition diminution in value, if any, of the Administrative Agent's or

Secured Party's interest in the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors of the Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (each such diminution in value, a "Diminution in Value").

10.    *Adequate Protection Claims and Liens.*

As adequate protection, the Administrative Agent and the other Secured Parties are hereby granted the following claims, liens, rights and benefits:

(a)    Section 507(b) Claim.    Solely to the extent of any Diminution in Value, administrative expense claims, which shall constitute joint and several superpriority claims against the Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "507(b) Claims"), subject and subordinate only to the Carve Out.

(b)    Adequate Protection Liens.    As security for and solely to the extent of any Diminution in Value, effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Administrative Agent of any Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the Administrative Agent for the benefit of itself and the other Secured Parties (all property identified in clauses (1), (2), (3) and (4) below being collectively referred to as the "Adequate Protection Collateral"), subject only to the Carve Out (all such liens and security interests, the "Adequate Protection Liens"):

(1)    First Priority on Unencumbered Property.    Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable first priority replacement lien on, and security interest in, all of the Debtors' rights in tangible and intangible assets, including without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to (x) valid, perfected, non-avoidable, and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered Property"), including without limitation, oil and gas properties (and as-extracted

collateral, goods, fixtures and hydrocarbons relating thereto), accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (other than Avoidance Actions) and the proceeds of all of the foregoing; provided that the foregoing collateral shall include, and the Adequate Protection Liens shall attach to, any proceeds or property recovered in respect of any Avoidance Actions; provided that the foregoing collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Final Order, would constitute a default or event of default under any of the Debtors' contracts or leases (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable nonbankruptcy law), but shall include the proceeds thereof;

(2)     Liens Junior to Certain Existing Liens.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, all tangible and intangible assets, including without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired (other than the property described in clause (1) or (3) of this paragraph 10(b)), that is subject to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Administrative Agent; provided that the foregoing collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Final Order, would constitute a default or event of default under any of the Debtors' contracts or leases (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable nonbankruptcy law), but shall include the proceeds thereof;

(3)     Liens Senior to Certain Existing Liens.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, all tangible and intangible assets, including without limitation, all prepetition and post-petition property of the Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired; provided that such liens and security interests shall not prime (x) any valid, perfected and unavoidable liens and security interests in existence as of the Petition Date that are held by or granted to any person other than the Administrative Agent or (y) valid and unavoidable liens and security interests in existence as of the Petition Date that are perfected after the Petition Date as permitted by section

546(b) of the Bankruptcy Code and that are held by or granted to any person other than the Administrative Agent; provided that the foregoing collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Final Order, would constitute a default or event of default under any of the Debtors' contracts or leases (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable nonbankruptcy law), but shall include the proceeds thereof;

(4)    Status of the Adequate Protection Claims. The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject to the Carve Out, or (ii) except as otherwise set forth in clauses (1), (2), and (3) of this paragraph 10(b), subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise;

11.    *Additional Adequate Protection.*    As additional adequate protection to the Administrative Agent and the Secured Parties (together with the 507(b) Claims and the Adequate Protection Liens, the "Adequate Protection Obligations"):

(a)    Payments: The Debtors are authorized and directed to pay to the Administrative Agent for the ratable benefit of the Secured Parties on the last business day of each calendar month after the entry of the Interim Order, all accrued and unpaid post-petition interest and commitment and letter of credit fees due and payable under the Credit Agreement, with such payments calculated based on the Alternate Base Rate plus the Applicable Margin for ABR Loans (as set forth in the Credit Agreement or the other applicable documents) (with all payments of interest to be without prejudice the rights of the Administrative Agent and other Secured Parties, upon the occurrence of a Termination Event, to assert a claim for payment of additional interest at any other rates (including at the default rate, if applicable) in accordance with the Credit Agreement).

(b)    Fees and Expenses: The Debtors are authorized and directed to pay, in accordance with this paragraph, on the first Thursday following fifteen (15) days after delivery of an invoice describing in customary detail (redacted for privilege and work product) the reasonable and documented fees, costs, and expenses incurred or accrued by the Administrative Agent, including without limitation, the reasonable and documented fees and expenses of one lead counsel, one local counsel and one financial advisor (collectively, the "Lender Professionals"). None of the fees, costs, expenses or other amounts payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; provided that counsel to the Administrative Agent shall submit copies of the Administrative Agent's legal counsels' and financial advisor's invoices to the Ad Hoc Noteholder Group, the

U.S. Trustee, and the Debtors, and the U.S. Trustee and the Debtors shall have ten (10) days following their receipt of such invoices to object to the reasonableness of the fees and expenses included in any such invoice. If any such objection is not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at a regularly-scheduled omnibus hearing in the Cases, provided that the Debtors shall pay any undisputed portion of such fees, costs and expenses on the first Thursday following fifteen (15) days after the initial presentment to the Debtors of such invoice.

(c)     Reporting: The Debtors shall comply with the reporting requirements set forth in the Credit Agreement. Any reporting provided to the Administrative Agent pursuant to the Credit Agreement shall also be provided to counsel to the Ad Hoc Noteholder Group.

(d)     Access to Records: In addition to, and without limiting, whatever rights to access the Secured Parties have under their respective Credit Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents and employees of the Administrative Agent (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, and (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

12.     Carve Out.

(a)     As used in this Final Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and any official committee appointed in these Cases pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Administrative Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,000,000 incurred after the first business day following delivery by the Administrative Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Administrative Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, counsel to the Ad Hoc Noteholder Group, and counsel to any official committee appointed in these Cases, which notice may be delivered following the occurrence and during the continuation of a Termination Event and upon

termination of the Debtors' consensual right to use Cash Collateral by the Lenders, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)     <u>Carve Out Reserves</u>.  On the day on which a Carve Out Trigger Notice is given by the Administrative Agent to the Debtors with a copy to counsel to any official committee appointed in these Cases (the "<u>Termination Declaration Date</u>"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "<u>Pre-Carve Out Trigger Notice Reserve</u>") prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "<u>Post-Carve Out Trigger Notice Reserve</u>" and, together with the Pre-Carve Out Trigger Notice Reserve, the "<u>Carve Out Reserves</u>") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "<u>Pre-Carve Out Amounts</u>"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Administrative Agent for the benefit of the Lenders, unless the Credit Agreement Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "<u>Post-Carve Out Amounts</u>"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Administrative Agent for the benefit of the Lenders, unless the Credit Agreement Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the Credit Documents, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 12(b), then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 12(b), prior to making any payments to the Administrative Agent or any of the Debtors' creditors, as applicable.  Notwithstanding anything to the contrary in the Credit Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the Administrative Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a perfected, first priority security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Administrative Agent for application in accordance with the Credit Documents.  Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Loans (as defined in the Credit Agreement) or increase or reduce the Credit Agreement Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional

Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the initial Budget, Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or in any Credit Documents, the Carve Out shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, and the 507(b) Claim, and any and all other forms of adequate protection, liens, or claims securing the Credit Agreement Obligations.

(c)    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)    <u>No Direct Obligation to Pay Allowed Professional Fees</u>. None of the Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to obligate the Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)    <u>Payment of Carve Out on or After the Termination Declaration Date</u>. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

13.    *Termination*. The Debtors' right to use the Cash Collateral pursuant to this Final Order shall terminate (the date of any such termination, the "<u>Termination Date</u>") without further notice or court proceeding five (5) business days following the delivery of a written notice (a "<u>Default Notice</u>") by the Administrative Agent to the Debtors, with a copy to Kirkland & Ellis LLP and counsel to the Ad Hoc Noteholder Group (any such five (5) business-day period of time, the "<u>Default Notice Period</u>") of the occurrence of any of the events set forth in clauses (a) through (r) below (unless cured by the Debtors or waived by the Administrative Agent prior to expiration of the Default Notice Period); <u>provided</u> that, if a hearing to consider any appropriate relief in connection with delivery of the Default Notice or continued use of Cash Collateral (as may be held on an expedited basis) is requested to be heard within such five (5) business day period but is scheduled for a later date by the Court, the Default Notice Period shall be automatically extended to the date of such hearing, but in no event by

more than two business days (the events set forth in clauses (a) through (r) below are collectively referred to herein as the "Termination Events"):

(a)     Failure of the Debtors to make any payment under this Final Order to the Administrative Agent or other Secured Parties on the date such payment becomes due;

(b)     Failure of the Debtors to maintain their cash management arrangements in a manner consistent with that described in the applicable "first-day" order;

(c)     The Debtors shall use, sell or lease any material assets outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without the prior written consent of the Administrative Agent and the Ad Hoc Noteholder Group (which consent may be provided by counsel to the Ad Hoc Noteholder Group) at least five (5) business days prior to the date on which the Debtors seek the authority of this Court for such use, sale or lease;

(d)     Failure of the Debtors to comply with the covenants contained in sections 8.06 and 8.07 of the Credit Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Adequate Protection Collateral

(e)     Failure of the Debtors to: (i) comply with any material provision of this Final Order; or (ii) comply with any other covenant or agreement specified in this Final Order (other than those described in clause (i) above) in any material respect;

(f)     The Debtors shall create, incur or suffer to exist any post-petition liens or security interests other than: (i) those granted pursuant to this Final Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any post-petition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (v) any other junior liens or security interests that the Debtors are permitted to incur under the Credit Agreement;

(g)     An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying the Interim Order or this Final Order without the consent of the Administrative Agent;

(h)     The Debtors shall create, incur or suffer any other claim which is *pari passu* with or senior to the 507(b) Claim (other than the Carve Out);

(i)     The Court shall have entered an order dismissing any of the Cases;

(j)     The Court shall have entered an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code;

(k)    The Court shall have entered an order appointing a chapter 11 trustee or any examiner with enlarged powers relating to the operation of the businesses in the Cases, unless consented to in writing by the Administrative Agent;

(l)    A filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Credit Agreement Obligations or asserting any other cause of action against and/or with respect to the Credit Agreement Obligations, the Prepetition Collateral securing the Credit Agreement Obligations or the Administrative Agent or other Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

(m)    The Court shall terminate or shorten the period pursuant to section 1121 of the Bankruptcy Code during which the Debtors have the exclusive right to file a plan of reorganization and solicit acceptances thereof;

(n)    The entry of an order in the Cases charging any of the Prepetition Collateral or Adequate Protection Collateral under section 552(b) of the Bankruptcy Code or section 506(c) of the Bankruptcy Code;

(o)    The entry of an order by the Bankruptcy Court granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code, authorizing any party to proceed against any material asset of any of the Debtors or that would materially and adversely affect the Debtors' ability to operate its businesses in the ordinary course;

(p)    There shall occur any Non-Permitted Variance;

(q)    The termination of the Restructuring Support Agreement as a result of an "RBL Termination Event" (under and as defined in the Restructuring Support Agreement); or

(r)    The payment of any prepetition claims against the Debtors that are junior in interest or right to the liens and mortgages on the Prepetition Collateral, other than as permitted by an order entered in the Cases.

14.    *Remedies upon the Termination Date.*  The Debtors shall promptly provide notice to the

Administrative Agent (with a copy to the U.S. Trustee and counsel to the Ad Hoc Noteholder Group)

of the occurrence of any Termination Event.  Upon the occurrence of the delivery of a Default Notice,

the Debtors, the Administrative Agent, and each Secured Party consent to a hearing on an expedited

basis to consider whether (a) a Termination Event has occurred and (b) any other appropriate relief

(including, without limitation, the Debtors' non-consensual use of Cash Collateral).    Except as

otherwise ordered by the Court, following the expiration of the Default Notice Period, (a) the Adequate

16

Protection Obligations, if any, shall become due and payable and (b) the Administrative Agent and each Secured Party may (i) setoff amounts in any account of the Debtors maintained with the Administrative Agent or such Secured Party, respectively, to the extent necessary for payment of the Adequate Protection Obligations and (ii) exercise the rights and remedies available under the Credit Documents, this Final Order or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations. The automatic stay under section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent necessary to permit such actions. During the Default Notice Period, the Debtors shall be entitled to continue to use the Cash Collateral in accordance with the terms of the Budget and this Final Order. Any delay or failure of a Secured Party to exercise rights under any Credit Document or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable Credit Document. Subject to the Carve Out, the Administrative Agent shall be entitled to apply the payments or proceeds of the Prepetition Collateral and the Adequate Protection Collateral in accordance with the provisions of the Credit Documents and in no event shall the Administrative Agent or the other Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, the Adequate Protection Collateral or otherwise. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Administrative Agent or the other Secured Parties under this Final Order shall survive the Termination Date.

15.    *Swap Agreements.*  To the extent a Swap Agreement is terminated and results in a Credit Agreement Obligation, such Credit Agreement Obligation will be paid in full in cash on the

17

effective date of the *Joint Prepackaged Chapter 11 Plan of Reorganization for EV Energy Partners, L.P. and its Debtor Affiliates* filed on the docket for these Cases on the Petition Date (as such plan may be amended, modified or supplemented) or such other plan of reorganization that is consummated in the Cases.

16.    *Limitation on Charging Expenses Against Collateral.*  Except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the Adequate Protection Collateral, the Administrative Agent or the other Secured Parties pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the affected party, and no such consent shall be implied from any other action, inaction, or acquiescence by the Administrative Agent or any of the Secured Parties.

17.    *Payments Free and Clear.*  Except to the extent of the Carve Out, any and all payments or proceeds remitted to the Administrative Agent on behalf of the other Secured Parties pursuant to the provisions of the Interim Order, this Final Order or any subsequent order of this Court shall be irrevocable (subject to paragraphs 19 and 24 of this Final Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

18.    *Section 552(b) of the Bankruptcy Code.*  Each of the Administrative Agent and the other Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Administrative Agent and the other Secured Parties.

19.   *All Parties' Reservation of Rights.*  All parties reserve their rights to argue that, to the extent that any cash payment of interest, fees and expenses as adequate protection to the Secured Parties is not allowed under section 506(b) of the Bankruptcy Code and not allowed on any other basis (including, without limitation, (i) on account of the Debtors' use of Prepetition Collateral and (ii) that there has been a Diminution in Value), such payments should be recharacterized and applied as payments of principal owed under the applicable Credit Documents; provided that the Secured Parties reserve their rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

20.   *Reservation of Rights of the Administrative Agent and Secured Parties.* Notwithstanding any other provision hereof, the grant of adequate protection to the Administrative Agent and the other Secured Parties pursuant hereto is without prejudice to the right of the Administrative Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Administrative Agent or the other Secured Parties under the Credit Documents or under equity or law, and the Administrative Agent and the other Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Credit Documents and/or equity or law in connection with all Events of Default (as defined in the Credit Agreement, and whether arising prior to or after the Petition Date).

21.   *Debtors' Reservation of Rights.*  The entry of this Final Order and the grant of adequate protection to the Secured Parties and the Administrative Agent pursuant to the terms hereof shall be without prejudice to the rights of the Debtors to, following the occurrence of the Termination Date, seek authority to use Cash Collateral and the Prepetition Collateral without the consent of the Secured

Parties and Administrative Agent, and the Secured Parties and Administrative Agent reserve all of their respective rights with respect to contesting any such motion or request by the Debtors or any other person; provided that the Debtors may not utilize Cash Collateral to seek such authority.

22.    *Perfection of Adequate Protection Liens.*

(a)    The Administrative Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder.    Whether or not the Administrative Agent shall, in its respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Final Order.    If the Administrative Agent determines to file any financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist in any such filings as reasonably requested by the Administrative Agent, and the automatic stay shall be modified to allow such filings.

(b)    A certified copy of this Final Order may, in the discretion of the Administrative Agent be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order or this Final Order for filing and recording; provided that the Debtors shall reimburse the Administrative Agent or its respective designees for the payment of any stamp, intangibles, recording or similar tax.

(c)    Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.    Any such provision shall have no force and effect with respect to the granting of Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the Credit Documents or this Final Order.

23.    *Preservation of Rights Granted Under this Final Order.*

(a)    Except as expressly provided in this Final Order, no claim or lien having a priority senior to or *pari passu* with the Adequate Protection Liens shall be granted or allowed, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise (other than the Carve Out).

(b)     Notwithstanding any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, (i) any 507(b) Claims, the other administrative claims granted pursuant to paragraph 7 of this Final Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and any 507(b) Claims, the other administrative claims granted pursuant to paragraph 7 of this Final Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (i) above.

(c)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Administrative Agent, of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of the Prepetition Collateral or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the Administrative Agent, of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Final Order, and the Administrative Agent and the other Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code with respect to all uses of the Prepetition Collateral and all Adequate Protection Obligations.

(d)     Subject to paragraphs 19 and 24 of this Final Order, the adequate protection payments made pursuant to this Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

(e)     Except as expressly provided in this Final Order, the Adequate Protection Obligations, any 507(b) Claims and the Adequate Protection Liens and all other rights and remedies of the Administrative Agent and the other Secured Parties granted by the provisions of this Final Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations.  The terms and provisions of this Final Order shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the 507(b) Claims, the other administrative claims granted pursuant to this Final Order, and all other rights and remedies of the Administrative Agent and the other Secured Parties granted by the provisions of this Final Order shall continue in full force and

effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

24.   *Effect of Stipulations on Third Parties.*  As a result of the Debtors' review of the Credit Documents and the facts related thereto, the Debtors have admitted, stipulated and agreed to various matters as set forth in paragraphs 4 and 5 above and the stipulations and admissions contained in this Final Order, including without limitation, in paragraphs 4 and 5 of this Final Order, shall be binding upon the Debtors and any successor thereto in all circumstances.  The stipulations and admissions contained in this Final Order, including without limitation, in paragraphs 4 and 5 of this Final Order, shall be binding upon all other parties in interest, including any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless (a) any party in interest (including any Trustee), with requisite standing, has timely commenced and properly filed an adversary proceeding or contested matter, as required under the Bankruptcy Rules (subject in either case to the limitations contained herein, including without limitation, in paragraph 25), challenging the validity, enforceability, priority or extent of the Credit Agreement Obligations or the liens on the Prepetition Collateral securing the Credit Agreement Obligations or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Administrative Agent or any of the other Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Credit Agreement Obligations or the Prepetition Collateral by no later than the date that is (i) the earlier of (A) seventy-five (75) days after the date of entry of the Interim Order (or, in the case of any official committee appointed in these Cases, sixty (60) days from the date such committee is appointed (the "Committee Challenge Deadline")) and (B) the effective date of a confirmed plan of reorganization and (ii) any such later date agreed to in writing by the Administrative Agent in its sole and absolute discretion or as

ordered by the Court (such time period, the "Challenge Period") and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; provided that, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date.  If no such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, without further order of this Court: (x) the Credit Agreement Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case; (y) the Administrative Agent's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 4, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (z) the Credit Agreement Obligations, the Administrative Agent's liens on the Prepetition Collateral and the other Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further challenge by any party in interest, and any such party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).  If any such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period, the stipulations and admissions contained in this Final Order, including without limitation, in paragraphs 4 and 5 of this Final Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any person, including any Trustee, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter.  Nothing in

this Final Order vests or confers on any person, including a Trustee, standing or authority to pursue any cause of action belonging to the Debtors or their estates. In the event that there is a timely successful challenge brought pursuant to this paragraph 24, the Court shall retain jurisdiction to fashion an appropriate remedy. Notwithstanding the foregoing, advisors to any official committee appointed in these Cases may investigate the claims and liens of the Secured Parties prior to the Committee Challenge Deadline at an aggregate expense not to exceed $50,000.

25.    *Limitation on Use of Collateral.*  The Debtors shall use the proceeds of the Prepetition Collateral solely as provided in this Final Order and the Budget, and for such other expenses as may be agreed to by the Administrative Agent in its sole discretion. Notwithstanding anything herein or in any other order of this Court to the contrary, no Prepetition Collateral or the Carve Out may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Credit Documents, or the liens or claims granted under the Interim Order or this Final Order or the Credit Documents; (b) assert any Claims and Defenses against any of the Administrative Agent or the other Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) seek to modify any of the rights granted to the Administrative Agent and the Secured Parties hereunder; or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court (without limiting a Termination Event, if any, that would result therefrom).

26.    *Binding Effect; Successors and Assigns.*  The provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including without limitation, the Administrative Agent and the other Secured Parties and the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other

fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Administrative Agent, the Secured Parties and the Debtors and their respective successors and assigns, provided that, except to the extent expressly set forth in this Final Order, the Administrative Agent and the Secured Parties shall have no obligation to permit the use of the Prepetition Collateral or extend any financing to any Trustee or similar responsible person appointed for the estate of any Debtor. For all adequate protection and stay relief purposes throughout the Cases, the Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date. For the avoidance of doubt, such requests will survive termination of this Final Order.

27. *Limitation of Liability.* In permitting the use of the Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order, the Administrative Agent and the other Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent or the other Secured Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

28. *No Impact on Certain Contracts/ Transactions.* No rights of any person under sections 555, 556, 559, 560, and 561 of the Bankruptcy Code shall be affected by the entry of this Final Order as to any contract or transaction of the kind listed in such Bankruptcy Code sections.

29.    *Effectiveness.*  This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Final Order. To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

30.    *Proofs of Claim.*  None of the Administrative Agent or the other Secured Parties will be required to file proofs of claim in any of the Cases or successor cases, and the Debtors' stipulations in paragraph 4 herein shall be deemed to constitute a timely filed proof of claim. Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Cases or successor cases shall not apply to the Administrative Agent or the other Secured Parties with respect to the Credit Agreement Obligations. Notwithstanding the foregoing, the Administrative Agent, on behalf of itself and the applicable Secured Parties, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) in the Debtors' lead Case, a single master proof of claim in the Cases for any claims arising under the Credit Agreement and hereunder (the "Master Proof of Claim"). The Master Proof of Claim, if filed, shall not be required to identify whether any Secured Party acquired its claim from another party and the identity of any such party or be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this paragraph 30 and the Master Proof of Claim are intended solely for the purpose of administrative convenience. The Master Proof of Claim, if filed, shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the Administrative Agent.

31.    *Miscellaneous.* Notwithstanding anything in this Final Order to the contrary, nothing in this Final Order shall in any way prime or affect the rights, if any, of U.S. Specialty Insurance Company and/or its affiliates, successors, and/or assigns (the "Surety") as to:  (a) any funds it is holding and/or being held for it presently or in the future whether in trust, as security, or otherwise; and (b) any substitutions or replacements of said funds including accretions to and interest earned on said funds; and (c) any letter of credit related to any indemnity, cash collateral, collateral trust, or related or similar agreements between Surety and the Debtor and/or Surety and any of the Debtor's subsidiaries or affiliates (collectively, (a) to (c), the "Surety Assets").  Nothing in this Final Order shall affect the rights of the Surety under any indemnity, cash collateral, collateral trust or related agreements between the Surety and any of the Debtors and/or their affiliates under any indemnity, collateral trust, or related or similar agreements between the Surety and the Debtors and/or their affiliates, in each case, related to the Surety Assets.  In addition, nothing in this Final Order shall prime the setoff and/or recoupment rights, if any, or the lien rights of the Surety, if any, or of any party to whose rights the Surety, has or may become subrogated therein, if any, and/or any subrogation or other common law rights of the Surety, if any.  To the extent that any Surety Assets are being held by the Debtors and are used by the Debtors as part of cash collateral, a concomitant replacement trust claim or replacement lien shall be granted to the Surety equal to the amount of use of those funds with any replacement trust fund claim to be equal to the amount of trust funds used, and any replacement lien to have the same priority, amount, extent and validity as existed as of the Petition Date.  In addition, notwithstanding anything in this Final Order to the contrary, the rights, claims and defenses of the Debtors and of the Surety, including, but not limited to, the Surety's rights under any properly perfected liens and claims and/or claim for equitable rights of subrogation, and rights of the Debtor and of any successors in interest to the Debtor, and any creditors, to object to any such liens, claims and/or equitable subrogation and other

rights, are fully preserved.    Nothing herein is an admission by the Surety or the Debtor, or a determination by the Bankruptcy Court, regarding any claims under the bonds, and the Surety and the Debtor reserve any and all rights and defenses in connection therewith.

32.    *Jurisdiction.*    This Court shall retain jurisdiction to enforce the terms of this Final Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

33.    *Controlling Effect of Final Order.*    To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion or the Interim Order, the provisions of this Final Order shall control to the extent of such conflict.

Wilmington, Delaware
Date:  April __Z5__, 2018

Christopher S. Sontchi
United States Bankruptcy Judge