**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| *In re*: | ) ) | Chapter 11 |
| EV ENERGY PARTNERS, L.P., *et al.*[1] | ) ) | Case No. 18-10814 (CSS) |
|  | ) ) | (Jointly Administered) |
| Debtors. | ) ) | |
|  | ) ) | **Objection Deadline: May 8, 2018 at 5:00 p.m.** **Hearing Date: May 15, 2018 at 10:00 a.m.** |

**OBJECTION OF THE SECURITIES AND EXCHANGE
COMMISSION TO APPROVAL OF THE DISCLOSURE
STATEMENT AND CONFIRMATION OF THE
<u>DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN</u>**

The United States Securities and Exchange Commission ("Commission"), a statutory party to these proceedings[2] and the federal agency responsible for regulating and enforcing compliance with the federal securities laws, objects to approval of the Disclosure Statement ("Disclosure Statement") and confirmation of the Joint Prepackaged Chapter 11 Plan ("Plan") of EV Energy Partners, L.P. ("EVEP") and its affiliated debtors (collectively, "Debtors"), dated March 14, 2018. In support of its objection, the Commission respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: EV Energy Partners, L.P. (5690); EV Properties, L.P. (5543); EV Properties GP, LLC (3943); EnerVest Production Partners, Ltd. (8619); EVPP GP, LLC (8340); CGAS Properties, L.P. (7277); EVCG GP, LLC (7274); EnerVest Monroe Marketing, Ltd. (7606); EnerVest Monroe Gathering, Ltd. (7608); EV Energy GP, L.P. (5646); EV Management, LLC (5594); EV Energy Finance Corp. (3405); Belden & Blake, LLC (6642); and EnerVest Mesa, LLC (1725). The Debtors' service address is: 1001 Fannin Suite 800, Houston, TX, 77002.

[2] As a statutory party in corporate reorganization proceedings, the Commission "may raise and may appear and be heard on any issue[.]" 11 U.S.C. § 1109(a).

1

**INTRODUCTION**

The Commission objects to confirmation of the Plan because it would release the liability of, and permanently enjoin actions against, non-debtor third parties in contravention of Sections 524(e) and 1123(a)(4) of 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").  As a general matter, nondebtor third party releases contravene Section 524(e) of the Bankruptcy Code, which provides that only debts of the debtor are affected by Chapter 11 discharge provisions.  Such releases have special significance for public investors because they may enable nondebtors to benefit from a debtor's bankruptcy by obtaining their own releases with respect to past misconduct, including violations of the federal securities laws or breaches of fiduciary duty under state law.

While such releases may be allowed if parties expressly consent to them, and the releases do not result in disparate treatment among similarly situated class members, those circumstances are not present here.  Nor are there exceptional circumstances that would support non-consensual releases.  Most notably, the parties being released did not all contribute fair consideration in exchange for the releases.  In addition, to the extent the third party releases purport to release direct claims between non-debtor parties, the releases do not affect the assets or administration of the Debtors' estates and the Court therefore may lack subject matter jurisdiction and authority to approve them.

The Commission has similar concerns regarding an exculpation clause in the Plan that provides that the exculpated parties shall have no liability for any acts or omissions taken in connection with the restructuring, including certain prepetition conduct, but excluding actual fraud, gross negligence, or willful misconduct.

The release and exculpation provisions are particularly concerning because public investors have filed letters and a motion on this Court's docket, seeking the appointment of an examiner and equity committee and/or objecting to the Plan. *See*, *e.g.*, Docket Nos. 43, 91, 96, 107, 108, 119, 120, 147, 160. These investors are concerned about alleged omissions from the Debtors' SEC filings, related party transactions, and insider trading activities, which could form the basis of claims by the investors against the non-debtor parties being released.

Thus, the release and exculpation provisions should be deleted from the Plan or the Plan should be amended to state: (i) that any creditor or shareholder who abstains from voting, votes to reject, or is deemed to reject will not be bound by the releases *and* that any creditor who votes to accept the Plan but separately opts out of the releases (in this case, a simple opt-out form will have to be provided) will not be bound by the releases; (ii) that the exculpation clause will be narrowly tailored to be consistent with the revised releases and exclude prepetition conduct; and (iii) that the government is carved out of the releases.[3]

## BACKGROUND

On April 2, 2018, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware and are seeking simultaneous approval of their prepackaged Plan and Disclosure Statement.

---

[3] The Commission reserves its right to supplement this objection if, among other things, a government carve out to the releases that is acceptable to the Commission is not added to the Plan or proposed confirmation order.

The Debtors were founded in 2006 with the goal of acquiring lower-risk oil and gas properties in the United States. Debtor EVEP is a publicly held master limited partnership, with approximately 49,368,869 common units issued and outstanding as of the petition date. Discl. Stmt., § IV(E)(c). EVEP's units are listed on the Nasdaq Capital Market. *Id.* at § VII(E)(5). Debtor EV Energy GP, L.P. ("EV Energy GP") is EVEP's general partner and Debtor EV Management, LLC ("EV Management") is the general partner of EV Energy GP. *Id.* at § IV(A). EV Management is a wholly owned subsidiary of non-Debtor EnerVest, one of the 25 largest oil and natural gas companies in the United States. *Id.* EnerVest and certain of its affiliates also have a significant interest in the Debtors through their 71.25 percent ownership of EV Energy GP, which, in turn, owns a two percent general partner interest in EVEP and all of its distribution rights. *Id.* The Debtors' senior notes are publicly traded.

Prior to the petition date, EVEP entered into a restructuring support agreement with Consenting Noteholders, the Consenting RBL Lenders and the EnerVest Parties (as such terms are defined in the Plan), pursuant to which these stakeholders agreed to accept the Plan. Discl. Stmt., § I.[4] The Plan provides that holders of Class 3 allowed RBL facility claims that vote to accept the Plan shall receive, among other things, new revolving loans under the amended RBL credit facility in an amount equal to the principal amount of their claims. Holders of Class 3 allowed RBL facility claims that vote to reject the Plan or fail to properly submit a ballot shall receive, among other things, new term loans under the alternative term loan in an amount equal to the principal amount of their claims. Holders of Class 4 allowed senior notes claims shall receive 95

---

[4] The Debtors' proposed restructuring, as contemplated by the RSA, is supported by 94 percent in amount of Senior Notes Claims and approximately 70 percent in amount of RBL Facility Claims. Discl. Stmt., § I.

percent of the new common stock ("New Common Stock") of the entity that will become the ultimate parent of the entity that acquires EVEP's assets (subject to dilution by the management incentive plan and warrants). Holders of allowed general unsecured claims are unimpaired, and existing EVEP equity interests will be canceled. Holders of existing EVEP equity interests shall receive: (i) five percent of the New Common Stock (subject to dilution by the management incentive plan and warrants); and (ii) new warrants for up to eight percent of New Common Stock (subject to dilution by the management incentive plan). Section 510(b) claims shall be cancelled without any distribution. Discl. Stmt., § II(D)(2)(A).

The Plan contains a third party release (the "Non-Debtor Release"), which releases claims against: (a) the Debtors or the reorganized Debtors; (b) the senior noteholders; (c) the indenture trustee; (d) the ad hoc committee of senior noteholders; (e) the RBL lenders that are parties to the restructuring support agreement; (f) the RBL agent; (g) the amended RBL credit facility agent; (h) non-Debtors EnerVest, Ltd. and EnerVest Operating, L.L.C.; and (i) such entities' related parties, including their professionals, and current and former officers and directors (the "Released Parties").[5] The Non-Debtor Release is for any and all claims and causes of action and a wide range of other

---

[5] The Plan provides that:

> "*Released Parties*" means collectively, in each case solely in their respective capacities as such: (a) the Debtors and the Reorganized Debtors; (b) the Consenting Noteholders and all other Senior Noteholders; (c) the Indenture Trustee; (d) the Ad Hoc Committee of Noteholders; (e) the Consenting RBL Lenders; (f) the RBL Agent; (g) the Amended RBL Credit Facility Agent; (h) each of the EnerVest Parties; and (i) with respect to each of the foregoing entities described in clauses (a) through (h), such ***entity's current and former affiliates, partners, subsidiaries, officers, directors, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective successors and assigns***, in each case in their capacity as such.

Plan, § I(A)(121) (emphasis added).

obligations, but excludes claims arising from willful misconduct, fraud, and gross negligence.

The Non-Debtor Release binds holders of claims and interests who: (i) vote in favor of the Plan; (ii) are deemed to have voted in favor of the Plan because they are unimpaired; (iii) reject or are deemed to reject the Plan but fail to opt out of the Non-Debtor Release by filing a timely objection to the Non-Debtor Release[6]; or (iv) abstain from voting on the Plan or otherwise fail to return a ballot and fail to opt out of the Non-Debtor Release by filing a timely objection to the Non-Debtor Release.[7]

The exculpation provision provides that exculpated parties shall have no liability to creditors and interests holders for acts or omissions taken in connection with prepetition restructuring efforts and the bankruptcy case, although actual fraud, willful misconduct, and gross negligence are carved out. Plan, §§ I(57), (58); VIII(E).

---

[6] Public unit holders are deemed to reject the Plan.

[7] The Plan provides:

> "*Releasing Parties*" means collectively, and in each case solely in its capacity as such: (a) the Debtors; (b) the Consenting RBL Lenders; (c) the RBL Agent; (d) the Consenting Noteholders; (e) the Indenture Trustee; (f) the EnerVest Parties; (g) each holder of a Claim entitled to vote to accept or reject the Plan that (i) votes to accept the Plan or (ii) votes to reject the Plan or does not vote to accept or reject the Plan but does not affirmatively elect to "opt out" of being a Releasing Party by timely objecting to the Plan's third-party release provisions; (h) each holder of a Claim or Existing Equity Interest that is Unimpaired and presumed to accept the Plan; (i) each holder of a Claim or Existing Equity Interest that is deemed to reject the Plan that does not affirmatively elect to "opt out" of being a Releasing Party by timely objecting to the Plan's third-party release provisions; and (j) with respect each of the Debtors, the Reorganized Debtors and the foregoing entities described in clauses (a) through (i), ***such entities' current and former affiliates, and such entities' and such affiliates' partners, subsidiaries, predecessors, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), members, officers, principals, employees, agents, managed accounts or funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, together with their respective successors and assigns***.

Plan, § I(A)(122) (emphasis added).

## **DISCUSSION**

### I. The Non-Debtor Release is not consensual and does not satisfy the standard to be approved as a nonconsensual release.

A. <u>The Non-Debtor Release is Not Consensual</u>.

Section 524(e) addresses the scope of a bankruptcy discharge and states, in relevant part, that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The Bankruptcy Code contemplates that a discharge only affects the debts of those submitting to its burdens. *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203, 211 (3d Cir. 2000). Nonetheless, courts in this District have held that third party releases of non-debtors may be allowed if they are consensual. *See In re Washington Mutual, Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011) (citing *Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004); *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999)); *see also In re Arrowmill Dev. Corp.*, 211 B.R. 497, 506-07 (Bankr. D.N.J. 1997) (court held that debtors must give creditors and interest holders an opportunity to individually consent to the release, apart from voting on the plan).

In the Commission's view, releases should be considered to be consensual only if the affected parties provide affirmative consent beyond simply voting in favor of the plan. Here, the Plan contains no mechanism for those who vote in favor of the Plan to opt into or out of the Non-Debtor Release.

With respect to opt-out provisions, bankruptcy courts in this Circuit have generally held that an opt-out mechanism is not sufficient to support a third party release, particularly with respect to those who do not return a ballot. *See Washington Mutual*,

442 B.R. at 355 ("[f]ailing to return a ballot is not a sufficient manifestation of consent to a third party release"); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (court found nondebtor releases consensual and binding only on creditors and interest holders voting to accept the plan); *cf. In re Spansion, Inc.*, 426 B.R. 114, 144-45 (Bankr. D. Del. 2010) (court found releases consensual only with respect to parties voting to accept the Plan, and unimpaired creditors deemed to have accepted the Plan). Thus, simply abstaining from voting or voting to reject a plan but failing to opt out of the releases does not constitute "consent." *But see, In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013) (in nonpublic company case, nondebtor releases deemed consensual with respect to both impaired creditors who abstained from voting on the Plan, and those who voted to reject the plan and did not otherwise opt out of the releases).

Here, the Plan deems consent to the Non-Debtor Releases to be established by silence or failure to opt out. The Non-Debtor Releases bind: those who vote in favor of the Plan or are unimpaired and have no opportunity to opt out; and those who reject or are deemed to reject the Plan, fail to return a ballot, or abstain from voting but, in each case, fail to opt out by filing an objection. Thus, senior noteholders and public unit holders are bound by the Non-Debtor Releases unless they opt-out, and the method by which creditors and investors can "opt out"—by timely filing an objection—is unduly burdensome and onerous.

The Restatement of Contracts makes clear that silence cannot be deemed consent under the facts of this case. Under the Restatement, silence can be deemed to be acceptance only:

8

(1)
>
> (a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation.
> (b) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.
> (c) Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.

(2) An offeree who does any act inconsistent with the offeror's ownership of offered property is bound in accordance with the offered terms unless they are manifestly unreasonable. But if the act is wrongful as against the offeror it is an acceptance only if ratified by him.

Restatement (Second) of Contracts, § 69; *see also Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 433 n.3 (D. Del. 2012) ("Merely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting.").

None of the situations enumerated in the Restatement apply here. The Debtors cannot rely on the silence of any voting or non-voting party as a manifestation of that party's acceptance of the Non-Debtor Releases. Indeed, requiring a timely objection to opt out is particularly egregious. Even in the case of holders of RBL facility claims and senior noteholders who vote in favor of the Plan, manifestation of consent to the Release cannot be assumed because that holder of an RBL facility claim or noteholder has no opportunity to separately consent to or opt out of the Non-Debtor Releases.

B. The Non-Debtor Release does not satisfy the standard to be approved as a nonconsensual release because it is not: (i) fair to the releasing parties; (ii) <u>necessary to the reorganization; and (iii) supported by the facts of this case</u>.

The Third Circuit has held that allowing nonconsensual non-debtor releases is an "extraordinary remedy" that should be used only sparingly. *See In re Continental Airlines*, 203 F.3d at 217. In order to bind all of the affected parties without their consent, the Debtors would need to show that the impacted classes received fair consideration and that the releases are necessary to the Debtors' reorganization. *See id.* at 215;[8] *In re Spansion, Inc.*, 426 B.R. at 144-145. In particular, the Third Circuit in *Continental* focused on whether the releases were given in exchange for reasonable financial consideration, separate and apart from the consideration to which the class was entitled as creditors under the Plan. *In re Continental Airlines*, 203 F.3d at 215. Courts in Delaware consider a number of factors, including whether: "(i) the non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consenting creditors, i.e., whether the non-consenting creditors received reasonable compensation in exchange for the release." *In re Spansion, Inc.*, 426 B.R. at 144-145.

---

[8] In *In re Continental Airlines*, 203 F.3d at 211, the Third Circuit rejected a plan provision that released and permanently enjoined shareholder lawsuits against present and former officers and directors who were not in bankruptcy. The court held that the release and injunctive provisions fell squarely into the Section 524(e) prohibition because they amounted to nothing more than a lockstep discharge of nondebtor liability. But the Court held open the possibility that "there are circumstances under which [it] might validate a nonconsensual release that is both necessary and given in exchange for fair consideration," *Id*. at 214, n.11, but made this comment in light of releases and permanent injunctions issued in such extraordinary cases as *Robins*, *Manville*, and *Drexel*; *See Menard-Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694 (4th Cir. 1989); *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89 (2d Cir.1988); *Drexel Burnham Lambert Trading Corp. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285 (2d Cir. 1992); *see also Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 143 (2d. Cir. 2005) (the Second Circuit held a "nondebtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to the success of the plan. . . .").

Here, the distributions to holders of claims and interests are simply a function of the mechanics of the Plan, not a payment in exchange for the Non-Debtor Release.

When applying the *Continental* factors to the facts of this case, it is clear that the Non-Debtor Release contravenes Bankruptcy Code Section 524(e) and applicable Third Circuit law. There is no evidence that fair consideration was provided specifically in exchange for the release of claims against nondebtors or that all of the nondebtors made contributions to the Plan. Indeed, the "Released Parties" include not just the enumerated parties, but also, among others, those parties' current and former officers, directors, and managed funds, who may not have contributed anything to the Plan or restructuring. Plan, § I(A)(121). In addition, the "Releasing Parties" include not just holders of claims and interests, but also each such party's equity-holders and their affiliates' equity-holders. *Id.* at § I(A)(122). There has not been an adequate showing that all of these Released Parties have provided a critical financial contribution, or that the releases are fair to all of the Releasing Parties, some of whom may not have received actual notice of the Disclosure Statement and Plan. Based on the above, it is the Commission's position that the Non-Debtor Release should be stricken from the Plan or the Plan should be amended to provide that unit holders and senior noteholders are not bound by the Non-Debtor Release.

> **II.    The Non-Debtor Release results in disparate treatment of similarly situated class members in contravention of Section 1123(a)(4) of the Bankruptcy Code.**

Section 1123(a)(4) of the Bankruptcy Code requires that a plan "[m]ust provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or

interest." 11 U.S.C. § 1123(a)(4).  Here, senior noteholders who reject the Plan and opt out of the Releases will receive the same consideration as both senior noteholders who accept the Plan and are deemed to accept the Releases and those who abstain or reject the Plan and fail to opt out of the Releases.  This constitutes unequal treatment of similarly situated class members under Section 1123(a)(4) of the Bankruptcy Code, which renders the Plan unconfirmable.

### III. The Court lacks subject matter jurisdiction and authority to approve the Non-Debtor Release.

Here, the broad release language purports to release claims based on "any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date."  Plan § VIII(D).  This language purports to release actions by, among others, public unit holders and senior noteholders against nondebtors that may not affect the administration or property of the estate.  This Court lacks subject matter jurisdiction over the release of such claims.  *See Bank of N.Y. v. Becker*, 488 B.R. 303, 312 (E.D. PA 2013), *aff'd on other grounds*, 571 Fed. Appx. 139 (3d Cir. 2014); *see also In re John-Mansville Corp.*, 517 F.3d at 66, *vacated & remanded on other grounds*, 557 U.S. 137 (2009), *aff'g in part & rev'g in part*, 600 F.3d 135, 146 (2d Cir. 2010) ("a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the *res* of the bankruptcy estate"); *accord In re Dreier LLP*, 429 B.R. 112, 132 (Bankr. S.D.N.Y. 2010) (because the court lacks subject matter jurisdiction to enjoin claims that do not affect the property of the estate or the administration of the estate, nondebtor third party releases must be limited to claims that are derivative of the debtors)*; see also In re Metcalfe & Mansfield Alternative Inv.*, 421 B.R. 685, 695 (Bankr. S.D.N.Y. 2010).

In addition, this Court may lack Constitutional authority to approve the Non-Debtor Release. *See Opt-Out Lenders v. Millennium Lab Holdings II, LLC (In re Millennium Lab Holdings II, LLC)*, 242 F.Supp.3d 322 (D. Del. 2017) (concluding that the bankruptcy court had related to jurisdiction under the facts of that case, but leaving open the question of whether the bankruptcy court had Constitutional authority to approve non-debtor releases), *remanded to* 572 B.R. 252 (Bankr. D. Del. 2017) (concluding bankruptcy courts have such authority), *appeal docketed*, No. 17-01461-LPS (D. Del. Oct. 17, 2017).

Pursuant to Local Rule of Bankruptcy Practice and Procedure 9013-1(h), the Commission does not consent to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**CONCLUSION**

Thus, the Non-Debtor Release and exculpation provision should be deleted from the Plan or the Plan should be amended to state: (i) that any creditor or shareholder who abstains from voting, votes to reject, or is deemed to reject will not be bound by the Non-Debtor Release *and* that any creditor who votes to accept the Plan but separately opts out of the Non-Debtor Release (in this case, a simple opt-out form will have to be provided) will not be bound by the Non-Debtor Release; (ii) that the exculpation clause will be narrowly tailored to be consistent with the revised Non-Debtor Release and exclude prepetition conduct; and (iii) that the government is carved out of the releases

Dated: May 8, 2018
       Washington, DC

                                      UNITED STATES SECURITIES AND
                                      EXCHANGE COMMISSION

                                      By:/s/ *Therese A. Scheuer*
                                          Therese A. Scheuer
                                          Senior Counsel
                                          100 F Street, NE
                                          Washington, DC 20549
                                          Tel.: (202) 551-6029
                                          Fax: (202) 772-9317
                                          scheuert@sec.gov

Of Counsel: Alistaire Bambach
                  Morgan Bradylyons